**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON I. BROWN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVL ACTION NO. 21-CV-2930** |
| | : | |
| **DEPARTMENT OF** | : | |
| **CORRECTIONS,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**JONES, J.**                                                                      **DECEMBER   6, 2021**

Plaintiff Aaron I. Brown, a state prisoner incarcerated at SCI-Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Eighth Amendment rights.  (ECF No. 2.)  Brown's Complaint names the following Defendants:  (1) the Department of Corrections, (2) the Commonwealth of Pennsylvania, and (3) Facility Manager Jaime Sorber. All Defendants are sued in their official capacities.  Brown has paid the required filing fee in this case.  For the following reasons, the Court will dismiss the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**I.      FACTUAL ALLEGATIONS**[1]

Brown alleges that on February 5, 2021, he was "force[d] to an homosexual lifestyle under power exercise by Department of Corrections in Commonwealth of Pennsylvania."  (*Id.* at 5.)  It appears that, on or about that date, he was transferred from single cell status to double cell status.  (*Id.*)  Brown appears to allege that he was previously afforded single cell status to accommodate his religious beliefs, and that his current double cell status violates those beliefs.[2]

---

[1] The facts set forth in this Memorandum are taken from Brown's Complaint.

[2] Brown appears to reference a section of a Prisoner's Handbook, DC-ADM 819, which he confusedly describes as follows:  "Accommodations for Religious Beliefs.  Religious beliefs

(*Id.*)  He claims that he has suffered injuries including mental anguish[3] and suicidal thoughts.  He asserts that his assignment to double cell status violates his First and Eighth Amendment rights, and requests that he be returned to single cell status.  (*Id.*)

Brown alleges that he unsuccessfully engaged in the grievance process at SCI-Phoenix. (*Id.* at 6-8.)  Attached to his Complaint are copies of grievances submitted and responses thereto. (ECF No. 2-1 at 2-6.)  Also attached to his Complaint are several pages of what appear to be religious writings.  (ECF No. 2 at 12-18.)

## II.    STANDARD OF REVIEW

Although Brown has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See*

---

under First Amendment of United States Constitutions for single cell status against double cell status, adverse to live an homosexual lifestyle.  That overcome with my religious emotions. Innovates into my religious believes that have it rejected."  (*Id.* at 5.)

[3] The Complaint states "mental angriest," which the Court understands to mean mental anguish.

*Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  ).  '"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As Brown is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.   Claims Against the Commonwealth for Injunctive Relief

Brown asserts claims against Sorber, the Department of Corrections and the Commonwealth of Pennsylvania, and requests that he be returned to single cell status.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100

3

(1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). However, state officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002). Courts reason that injunctions against state officials actively violating federal laws are "'necessary to vindicate the federal interest in assuring the supremacy of that law,'" despite the Constitution's prohibition against suits against the state. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In *Koslow*, the Third Circuit held that because "the Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law," a plaintiff may sue a state official for ongoing violations of the Americans with Disabilities Act. *Id.* at 178.

To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted).

Here, Brown asserts that the decision to place him in a double cell violates his constitutional rights, and he requests that he be returned to single cell status to end the continuing violation. This request for relief is not barred by the Eleventh Amendment.

### B.     Claims Against Defendant Sorber

Brown identifies Defendant Sorber as the Facilities Manager at SCI-Phoenix and asserts an official capacity claim against him.  However, to state a claim against a Defendant in a § 1983 action, a plaintiff must allege facts explaining that Defendant's involvement in the claimed constitutional violations.  That is because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . ."   *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Rode*, 845 F.2d at 1207.  Brown provides no allegations about what Defendant Sorber personally did to violate his constitutional rights.

Moreover, Brown has not stated a plausible claim against Sorber in his supervisory capacity.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility is not sufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be

'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Additionally, "[u]nder Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ."  *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).  A claim for supervisory liability or liability based upon a failure to train involves four elements:  (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice.  *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable.  In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . .  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . .  Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.  Brown has not alleged that Sorber himself participated in conduct that violated Brown's rights, or that he established and maintained a policy, practice or custom which directly caused the alleged constitutional harm, or that he failed to train or supervise employees whose conduct resulted in a constitutional violation.  Accordingly, Brown has not stated a plausible claim against Sorber and his claims will be dismissed.

### C.    Failure to State a Constitutional Violation

The Court understands Brown to be pursuing a claim for unconstitutional punishment based on the conditions of his confinement and a claim for denial of his First Amendment right to religious freedom.

### 1.    Conditions of Confinement

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20).  In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("' [T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

Brown has not alleged a plausible constitutional claim based on the conditions of his confinement. His sole allegation is that he has been placed in a double cell. It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, Civ. A. No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). More specifically, housing multiple inmates in a cell does not alone establish a constitutional violation. *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells,

alone, is not per se unconstitutional."). Brown has not stated a plausible constitutional violation because he has not alleged that his placement in a two-person cell amounted to punishment, deprived him of a basic need, or otherwise caused him harm. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *see also Walker v. George W. Hill Corr.*, Civ. A. No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding).

Neither does Brown allege that his placement in a two-person cell was intended as punishment. He does not allege that the placement has deprived him of the basic necessities of life, or that he is in danger. Though he alleges that placement in a double cell constitutes a homosexual lifestyle, he has not identified any instances of conduct by a cellmate or how the mere placement in a shared cell placed him in danger. His sole complaint is that it violates his religious beliefs. This is not sufficient to state a plausible Eighth Amendment claim based on placement in a double cell and this claim will be dismissed.

### 2.      First Amendment Claim

Brown also contends that the double cell placement violates his First Amendment rights. The Supreme Court has recognized that the First Amendment guarantees that all prisoners must

be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).  However, in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise.  *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *O'Lone*, 482 U.S. at 348 (quotations omitted).  While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities.  *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone*, 482 U.S. at 353.

The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden.  *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).  For example, the Supreme Court has stated that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand."  *Cruz*, 405 U.S. at 322 n. 2.  "The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has

an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970).

Here, Brown does not identify the religion to which he adheres and does not identify the particular religious practices substantially burdened by his double cell placement.  Though he alleges that he considers double cell placement to constitute a homosexual lifestyle, which he claims is in violation of his religious beliefs, he does not identify any instances of interference with his religious practices or how his placement constitutes a substantial burden on his free exercise of his religion.  *See Tate v. Jones*, 1986 WL 182, at *1 (E.D. Pa. Apr. 8, 1986) (summary judgment granted to defendant where prisoner objected to double celling on religious grounds following fight with cellmate).  Brown has not stated a plausible claim for deprivation of religious freedom and this claim will be dismissed.  *Accord Wahid v. Lake*, Civ. A. No. 19-9041, 2020 WL 7345679, at *9 (C.D. Cal. July 22, 2020) (dismissing claim where plaintiff's conclusory assertion that his lack of a single cell burdened his exercise of religion without alleging any facts suggesting that his lack of single cell assignment in any way actually burdened his exercise of religion).

## IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss Brown's Complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  Brown will not be granted leave to amend his Complaint, because to do so would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002).  An appropriate Order follows.

BY THE COURT:

/s/ Hon. C. Darnell Jones II
_____
C. DARNELL JONES, II, J.

11